# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 19-695

STATE OF LOUISIANA

VERSUS

CHARLES NICHOLAS BROWN, JR.

A/K/A CHARLES BROWN, JR.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 16-849
HONORABLE SUZANNE M. DEMAHY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy Howard Ezell, and Candyce G. Perret, Judges.


**CONVICTION AFFIRMED, CASE REMANDED
FOR RESENTENCING, WITH INSTRUCTIONS.**

**Paula C. Marx**
**Louisiana Appellate Project**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Charles Nicholas Brown, Jr.**

**M. Bofill Duhe**
**District Attorney**
**Sixteenth Judicial District Court**
**W. Claire Howington**
**Nicole Burke**
**Aaron Brown**
**Assistant District Attorneys**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **State of Louisiana**

**SAUNDERS, Judge:**

Defendant, Charles Brown, Jr., was charged by bill of information filed on July 19, 2016, with attempted second degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1. Trial by jury commenced on September 17, 2018, and the jury found Defendant guilty of the responsive verdict of aggravated battery, a violation of La.R.S. 14:34, on September 20, 2018. A pro se motion for appeal was filed on October 15, 2018, and supplemented on May 10, 2019. On the same date, Defendant filed a pro se motion for new trial, which he supplemented on January 31, 2019. On November 8, 2018, Defendant was sentenced to serve six years at hard labor.

The State filed an amended bill of information charging Defendant as a habitual offender on November 8, 2018.[1] Defendant filed a response to the habitual offender bill on November 14, 2018. A habitual offender hearing commenced on January 10, 2019. At that hearing, the trial court ordered the parties to prepare briefs regarding whether a conflict of interest prohibited the use of one of Defendant's prior convictions. The "State's Memorandum in Favor of Judge Comeaux's Ability to Take Plea in Docket Number #13-13 for Use in Habitual Offender Hearing" was filed on February 4, 2019. Defendant's response was filed on February 19, 2019.

The habitual offender hearing resumed on February 26, 2019. At that time, the trial court concluded all predicate offenses could be used for habitual offender enhancement, found Defendant a fourth felony offender, vacated the previously imposed sentence, and sentenced Defendant to serve thirteen years at hard labor. The State objected to the sentence. The court then denied Defendant's motion for new trial and granted his motion for appeal.

---

[1]The State's Motion to Reconsider Sentence declares a habitual offender bill was filed on September 25, 2018. However, a habitual offender bill with that filing date is not included in the record or referenced in the appellant's brief filed by the State.

The State filed a motion to reconsider sentence on March 28, 2019. The motion was denied at a hearing held on May 22, 2019. The State filed a motion for appeal on May 28, 2019, and it was subsequently granted.

Defendant and the State are both before this court asserting assignments of error. Defendant attacks the admissibility of one of his predicate offenses, and the State alleges the trial court erred in imposing a sentence less than the mandatory minimum.

**FACTS:**

Defendant hit Jonathan Haile in the head with a skillet and stabbed him in the face and chest with a screwdriver. As a result of the attack, Haile suffered a left orbital fracture, stab wounds to the left face and left chest, and a left pneumothorax.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. We find no errors patent.

**DEFENDANT'S ASSIGNMENT OF ERROR:**

In his only assignment of error, Defendant contends the State failed to meet its burden of proving he was a fourth felony offender, as the presiding judge in his conviction for failure to register as a sex offender was his attorney in the case which required his registration. Thus, Defendant asserts the conviction for failure to register as a sex offender is not a valid predicate for habitual offender purposes. Consequently, Defendant claims he is a third felony offender and should be resentenced accordingly. We find no merit to this contention.

Louisiana Revised Statutes 15:529.1(D)(1)(b) provides:

> Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction alleged is invalid, he shall file a written response to the

2

information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction alleged in the information was obtained in violation of the constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

The Louisiana Supreme Court discussed the burden of proof at habitual offender hearings in *State v. Shelton*, 621 So.2d 769, 779-80 (La.1993) (footnote omitted):

If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three *Boykin* rights.

The habitual offender bill of information at issue listed the following offenses:

1) On September 20, 2018, CHARLES NICHOLAS BROWN, JR. was convicted of Aggravated Battery, said conviction being based upon the defendant's conviction, in the Sixteenth Judicial District Court, Parish of Iberia; State of Louisiana, Docket Number 16-0849.

2) And now, the undersigned Assistant District Attorney informs the Court that on December 10, 1987 CHARLES NICHOLAS BROWN, JR. was convicted of the crime of Aggravated Burglary, Attempted Forcible Rape and Simple Robbery, in the Sixteenth Judicial District Court, Parish of Iberia State of Louisiana, Docket Number 41576.

3

3) And now, the undersigned Assistant District Attorney informs the Court that on February 6, 2007, CHARLES NICHOLAS BROWN, JR. was convicted of the crime of Unauthorized Entry of An Inhabited Dwelling, in the Sixteenth Judicial District Court, Parish of Iberia State of Louisiana, Docket Number 01-389.

4) And now, the undersigned Assistant District Attorney informs the Court that on May 23, 2013 CHARLES NICHOLAS BROWN, JR. was convicted of the crime of Duty of Offenders to Notify Law Enforcement of Change of Address, in the Sixteenth Judicial District Court, Parish of Iberia State of Louisiana, Docket Number 13-13.

Defendant filed a response to the habitual offender bill, asserting the following:

A. The underlying pleas were improper and fail to meet the standards required by law for reasons including, but not limited to, the fact that defendant was never properly Boykinized prior to acceptance of the underlying pleas;

B. The gaps in time between the current and prior convictions and/or pleas are greater than those allowed by law;

C. The gaps in time between the prior convictions and/or pleas are greater than those allowed by law;

D. Sentencing as a habitual offender in accordance with the laws of the State of Louisiana represents a violation of defendant's constitutional protections.

Defendant objects to the inclusion of his conviction for failure to register as a sex offender as a predicate for habitual offender purposes because Judge Comeaux, the presiding judge in his conviction for failure to register as a sex offender, was his attorney in the case which required his registration. Defendant argues that Judge Comeaux's failure to recuse violates his right to due process.

In *State v. Cooper,* 96-119 (La. App. 3 Cir. 7/17/96), 678 So.2d 59, *writ denied*, 96-2121 (La. 1/24/97), 686 So.2d 857, this Court held that a judge who presided at trial and then the subsequent habitual offender sentencing hearing did not have to recuse himself, even though he had represented the defendant in both of

the underlying convictions. This court reasoned that the habitual offender ruling that the judge made was not based on any confidential knowledge that he had gained during his representation of the defendant; instead it was based on public record.

The fifth circuit has held that a judge's failure to recuse "is not a jurisdictional defect, and, as such is waived by an unconditional guilty plea." *See State v. Sede*, 08-547, pp. 5-6, 8 (La.App. 5 Cir. 2/10/09), 8 So.3d 702, *writ denied*, 09-1023 (La. 3/5/10), 28 So.3d 1006 (citing *Kidd v. Caldwell*, 371 So.2d 247, 250 (La.1979)). The *Sede* court went on to conclude there was no evidence the defendant would have fared better if another judge had been appointed to accept his plea. "Although the defendant did not plead to a reduced charge, he agreed to plead guilty in exchange for a life sentence, instead of the death penalty." *Id.* at 706.

In this case, at the time Defendant entered his plea in 2013, proof of actual bias was generally required to obtain relief based on a judge's failure to recuse. *State v. LaCaze*, 16-234, p.10 (La. 3/13/18), 239 So.3d 807, *cert. denied*, ___ U.S. ___, 139 S.Ct. 321 (2018). Defendant's conclusory allegations of potential bias would not meet his burden of proof. *See Shelton*, 621 So.2d 769 (La.1993). While Judge Comeaux represented Defendant twenty-six years prior to him taking the plea in the conviction of Docket No. 13-13, he was not called upon to examine his prior rulings in any of Defendant's cases in which he played a role, and Defendant pled guilty in exchange for an agreed upon sentence. Here, as in *Sede*, there is no evidence that defendant would have fared better if another judge had been appointed to accept his plea. *See Sede*, 8 So.3d 702. Additionally, although the trial court concluded that Defendant was a fourth felony offender, he was sentenced to thirteen years at hard labor, which was less than the statutory minimum. Moreover, recusal was not supported by the ruling in *Cooper*, 678 So.2d 59.

For the reasons set forth herein, we affirm Defendant's habitual offender adjudication.

**STATE'S ASSIGNMENT OF ERROR:**

In its only assignment of error, the State contends the trial court erred in imposing a sentence of less than the mandatory minimum.

As a fourth offender, Defendant was subject to a sentence of twenty years to life. La.R.S. 15:529.1(A)(4)(a); La.R.S. 14:34. Nevertheless, the trial court imposed a sentence of thirteen years at hard labor.

At the initial habitual offender proceeding, the State recommended a thirty-year sentence, noting the egregious nature of the offense and the fact that Defendant continued to commit crimes when released from prison. Defense counsel asked the trial court to take note of Defendant's age, as he was about to turn fifty, and that Defendant's mother was in poor health and he was "intricately involved" in her care. Defense counsel averred a sentence of twenty years would deny Defendant the opportunity "to ever see his mother again in life" and the opportunity to continue to "play that integral role in his family." Defense counsel asked that Defendant not be adjudicated a habitual offender and that the previously imposed six-year sentence be maintained. However, if he was adjudicated a habitual offender, defense counsel asked that Defendant be ordered to serve the minimum sentence. The judge then asked defense counsel if his argument was that a sentence imposed under La.R.S. 15:529.1 would be excessive. He answered affirmatively.

At the continuation of the habitual offender hearing, defense counsel reminded the court of the testimony of Defendant's sister regarding "the care given to his family members." After setting forth the applicable sentencing range, the trial court stated the following:

6

At this time, the Court feels that a sentence of 20 years in this case would be excessive for the following reasons: The Court has much concern of the previous convictions that make him a 4th offender, specifically, that one of his convictions is for failure to register, which he was only sentenced to two (2) years. His first conviction was in 1987 and he was – was he 18 years old? 17 years old or 18 years old?

BY MR. ARRON BROWN [the prosecutor]:

18.

BY THE COURT:

And he was 18 years old and he was sentenced to 25 years in prison. He has had some subsequent issues since then, however, a sentence of 20 years would be extremely excessive for the charge of aggravated battery, although this is his 4th felony conviction due to the fact that his predicate offenses, one being an unauthorized entry and the failure to register were not crimes of violence.

The court then sentenced Defendant to serve thirteen years at hard labor. The State objected to the sentence.

The State filed a Motion to Reconsider Sentence on March 28, 2019. Therein, the State asserted Defendant's record of nonviolent offenses could not play a major role in the court's departure from the mandatory minimum sentence. The State went on to discuss Defendant's criminal record as follows:

In the instant case, this Court noted that Mr. Brown was approximately eighteen (18) years old when he committed the crimes of aggravated burglary, attempted forcible rape, and simple robbery in docket number 41576. Mr. Brown's criminal history shows that if he is out of jail, he will continue to commit crimes. Despite the fact that he has spent a significant portion of his life incarcerated, Mr. Brown is a fourth felony offender. On December 10, 1987, Mr. Brown was convicted in docket number 41576 and sentenced to serve twenty-five (25) years, twenty (20) years, and seven (7) years in prison, concurrent. On July 3, 2000, Mr. Brown was released from the Louisiana State Penitentiary due to a diminution of sentence pursuant to La. R.S. 15:571.5. On March 2-3, 2001, which is less than one (1) year after gaining his freedom, Mr. Brown committed the crime of unauthorized entry of an inhabited dwelling. Mr. Brown returned to incarceration. On March 18, 2011, Mr. Brown was released from Allen Correctional Center due to a diminution of sentence pursuant to La. R.S. 15:571.1. On October 11, 2012, merely eighteen (18) months after gaining his freedom, Mr.

Brown committed the crime of duty of offenders to notify law enforcement of change of address. Mr. Brown again returned to incarceration. On October 20, 2015, Mr. Brown was released from incarceration after completing the sentences for all of his convictions. On May 8, 2016, less than one (1) year after gaining his freedom, Mr. Brown committed an aggravated battery. While Mr. Brown's life of crime may have begun when he was young, it has spanned approximately twenty-nine (29) years. The little time that Mr. Brown had outside of jail was used to commit more crimes. Mr. Brown has demonstrated that he is not receptive to rehabilitation. Mr. Brown's continued criminal conduct is the type of recidivism that the Habitual Offender Law is designed to deter and punish. The state argues that Mr. Brown is not an exceptional case, which would warrant a downward departure from the minimum sentence mandated by La. R.S. 15:529.1, but rather is the ideal candidate that the Legislature envisioned when creating this law.

The trial court denied the motion, stating:

When doing the Habitual Offender Sentencing, the Court did consider his criminal history, however, the Court did find circumstances within his criminal history that were particular to Mr. Brown. Specifically, that his first original crime of violence was -- he was twenty (20)?

. . . .

Twenty (20) when he got convicted, but eighteen (18) when the alleged offense occurred and that one of the offenses that they used to tack on to be able to charge him as a fourth felony offender was a Failure to Register as a Sex Offender.

The Court also did take note that, although the convictions could probably be upheld that there was some argument made about some issues that they may have had with pleas and how the pleas were taken. The Court is not saying that the convictions can't be upheld, although I do think there is [sic] some circumstances with Mr. Brown that need to be considered in this situation. And, although, as you can see accurately from the Habitual Offender Hearing, that he did commit crimes shortly after or was convicted of committing crimes shortly after he was released from incarceration, that I feel that the sentence that was given to him was appropriate, not only for the current offense that he was found guilty of, of aggravated battery, but also considering his criminal history and his likelihood of recidivism.

The State objected to the ruling.

In brief to this court, the State cites *State v. Dorthey*, 623 So.2d 1276 (La. 1993), which was reevaluated by the supreme court in *State v. Johnson*, 97-1906,

pp. 5-9 (La. 3/4/98), 709 So.2d 672, 675-77 (second alteration in original), as

follows:

> The Legislature has sole authority under the Louisiana Constitution to define conduct as criminal and provide penalties for such conduct. La. Const. art. III, § I; *State v. Dorthey*, [623 So.2d 1276] at 1280; *State v. Taylor*, 479 So.2d 339, 341 (La.1985). Acting pursuant to this authority, the Legislature passed the Habitual Offender Law. This Court, on numerous occasions, has held this statute to be constitutional. *See, e.g., State v. Dorthey, supra*; *State v. Badon*, 338 So.2d 665, 670 (La.1976). Since the Habitual Offender Law in its entirety is constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional. *Dorthey, supra* at 1281 (Marcus, J., concurring); *State v. Young*, 94-1636 (La.App. 4th Cir. 10/26/95), 663 So.2d 525.

> Given the above, it is apparent that the Legislature's determination of an appropriate minimum sentence should be afforded great deference by the judiciary. This does not mean, however, that the judiciary is without authority to pronounce a constitutional sentence if it determines that a mandatory minimum sentence is excessive in a particular case. Instead, we have held that courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution, although it falls within the statutory limits provided by the Legislature. *State v. Sepulvado*, 367 So.2d 762, 767 (La.1979). In *State v. Dorthey, supra*, this Court recognized that this power extends to the minimum sentences mandated by the Habitual Offender Law. *Id.* at 1280-81. However, this power should be exercised only when the court is clearly and firmly convinced that the minimum sentence is excessive.

> What exists, then, is a delicate balance between the Legislature and the judiciary. On one hand, the Legislature has the constitutional authority to determine the appropriate penalty for a crime. On the other hand, the judiciary has the authority, in the rare case, to declare a sentence within these statutory limits excessive under the facts of a particular case. The issue for this Court is to determine under what rare circumstances a sentencing court should exercise its authority to declare excessive a minimum sentence mandated by the Habitual Offender Law.

> In *State v. Dorthey, supra*, this Court held that a trial court must reduce a defendant's sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law "makes no measurable contribution to acceptable goals of punishment", or is nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime." *Id.* at 1280-81. Finding a mandatory minimum sentence constitutionally excessive requires much more, though, than the mere utterance of the phrases above.

A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. *See State v. Dorthey, supra* at 1281 (Marcus, J., concurring); *State v. Young, supra*. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality.

A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While the classification of a defendant's instant or prior offenses as non-violent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. LSA-R.S. 15:529.1 provides that persons adjudicated as third or fourth offenders may receive a longer sentence if their instant or prior offense is defined as a "crime of violence" under LSA-R.S. 14:2(13). Thus the Legislature, with its power to define crimes and punishments, has already made a distinction in sentences between those who commit crimes of violence and those who do not. Under the Habitual Offender Law those third and fourth offenders who have a history of violent crime get longer sentences, while those who do not are allowed lesser sentences. So while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.

Instead, to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:

> [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

*Young*, 94-1636 at pp. 5-6, 663 So.2d at 528 (Plotkin, J., concurring).

When determining whether the defendant has met his burden of proof by rebutting the presumption that the mandatory minimum sentence is constitutional, the trial judge must also keep in mind the goals of the Habitual Offender Law. Clearly, the major reasons the Legislature passed the Habitual Offender Law were to deter and punish recidivism. Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law. Given the Legislature's constitutional authority to enact statutes such

10

as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution.

Finally, if a sentencing judge finds clear and convincing evidence which justifies a downward departure from the minimum sentence under the Habitual Offender Law, he is not free to sentence a defendant to whatever sentence he feels is appropriate under the circumstances. Instead, the judge must sentence the defendant to the longest sentence which is not constitutionally excessive. This requires a sentencing judge to articulate specific reasons why the sentence he imposes instead of the statutory mandatory minimum is the longest sentence which is not excessive under the Louisiana Constitution. Requiring a sentencing judge to re-sentence a defendant in this manner is in keeping with the judiciary's responsibility to give as much deference as constitutionally possible to the Legislature's determination of the appropriate minimum sentence for a habitual offender.

The State suggests the mandatory minimum sentence in this case does not shock the conscience or amount to a needless imposition of pain and suffering. Moreover, Defendant failed to establish that he is entitled to a downward departure. The State notes the trial court pointed out Defendant committed new offenses relatively soon after he was released from custody. The State then points out that Defendant's first felony offenses were either crimes of violence or sex offenses. Further, the facts of the case in 01-389 indicate Defendant broke into a home and attempted to rape an eleven-year-old girl, and he received a significant benefit when he entered a plea to unauthorized entry of an inhabited dwelling.[2] Given this history, the State asserts the mandatory minimum sentence under La.R.S. 15:529.1 is not excessive.

The State asserts the non-violent nature of Defendant's prior crimes does not justify a downward departure. The fact that Defendant was a youthful offender in

---

[2]*State v. Brown*, 03-1747 (La.App. 3 Cir. 5/12/04), *writ denied*, 04-1413 (La. 11/8/04), 885 So.2d 1118, 874 So.2d 318, indicated that on March 3, 2001, between three and five o'clock in the morning, Defendant entered a home without permission and attempted to have sexual intercourse with the eleven-year-old victim.

1987 was not a proper consideration, and thirty years later Defendant should not benefit from mitigation afforded youthful offenders. Moreover, any purported issues with Defendant's prior convictions should not make the mandatory minimum sentence unconstitutional, as the trial court had determined they were admissible. Accordingly, the Defendant did not meet his burden of proving a downward departure was warranted, and the trial court's reasons for the downward departure do not support such a departure.

Defendant claims he is exceptional because he was eighteen years old when the 1987 offenses occurred, and that was over thirty years ago. Defendant contends the State places emphasis on the 2003 conviction in docket number 01-389. However, that conviction was vacated, and he pled guilty to unauthorized entry of an inhabited dwelling. Thus, the slate was wiped clean when this court granted a new trial in that case. *See State v. Langley*, 10-969 (La.App. 3 Cir. 4/6/11), 61 So.3d 747, *writ denied*, 11-1226 (La. 1/20/12), 78 So.3d 139, *cert. denied*, 568 U.S. 841, 133 S.Ct. 148 (2012). Defendant further argues he accepted responsibility in docket number 13-13 and pled guilty, which supports a finding of exceptionality. Defendant concludes a twenty-year sentence for aggravated battery is excessive.

The trial court gave several reasons for the downward departure: 1) Defendant pled guilty to failure to register and received a two-year sentence; 2) he committed his first offense at the age of eighteen and received a twenty-five-year sentence; and 3) Defendant's convictions for unauthorized entry and failure to register were non-violent offenses.

Defendant received the minimum sentence for failure to register in docket number 13-13. La.R.S. 15:542.1.4. In 1987, Defendant was sentenced to serve twenty-five years for aggravated burglary in docket number 41576. At the time he

committed that crime, the maximum sentence was thirty years and remains the same today. La.R.S. 14:60.

A previous sentence can be a factor in finding a downward departure is mandated. In *State v. Ross*, 15-1113 (La.App. 4 Cir. 12/21/16), 207 So.3d 511, *writ denied*, 17-118 (La. 9/22/17), 227 So.3d 823, *and writ denied*, 17-394 (La. 9/22/17), 227 So.3d 826, *and writ denied*, 17-537 (La. 9/22/17), 227 So.2d 827, the defendant was adjudicated a fourth felony offender and sentenced to two concurrent terms of twenty years imprisonment at hard labor. All of his felony convictions were for simple possession of an illegal substance, and he received probation for every prior conviction listed in the habitual offender bill. There was nothing in the record indicating the defendant violated his probation and was forced to serve the original terms of imprisonment. Under these circumstances, the fourth circuit found the defendant demonstrated he was exceptional, which warranted a downward departure from the mandatory minimum sentence of twenty years, noting he had never served a term of imprisonment despite his recidivist status, and his crimes were not violent in nature. *Id*. We find there is no similarity between the case at bar and *Ross*.

In *State v. Jones*, 12-863, 12-864 (La.App. 3 Cir. 2/6/13), 107 So.3d 861, *writs denied*, 13-516, 13-530 (La. 10/4/13), 122 So.3d 553, this court found the defendant's relative youth and the fact that the shooting arose from romantic difficulties and the potential loss of a pet were not sufficient for a downward departure from the mandatory life sentence as a third felony offender under La.R.S. 15:529.1. The fourth circuit, in *State v. Hunter*, 18-206, p. 16 (La.App. 4 Cir. 8/22/18), 252 So.3d 1053, 1065, *writ denied*, 18-1583 (La. 4/8/19), 267 So.3d 612, *cert. denied*, ___ U.S. ___, 140 S.Ct. 205 (2019), said it had "consistently refused to consider a defendant arguing his age and first-time offender status as 'exceptional' when the crime committed [was] violent in nature. *See* [*State v.*] *Green*, 17-0520,

13

p.5 [(La.App. 4 Cir. 11/15/17)], 231 So.3d [756] at 758; *State v. Ladd*, 15-0772 (La. App. 4 Cir. 4/13/16), 192 So.3d 235."

The transcript of the 1987 plea indicates Defendant encountered the victim outside her home watering plants, forced her into her apartment, and attempted to engage in sexual intercourse with her but was not successful. He also struck the victim on the face and body during that time. Defendant subsequently forced the victim to give him money. The 1987 offenses were violent in nature. The Defendant's age at the time of the offense would not have made him exceptional in 1987 and do not make him exceptional now.

As noted in *Johnson*, 709 So.2d 672, the non-violent nature of Defendant's prior convictions was factored into the habitual offender statute by the legislature, and the Defendant's record of non-violent offenses cannot be a major reason in declaring the mandatory sentence excessive.

Since his initial release from incarceration on July 3, 2000, Defendant has spent no more than nineteen consecutive months without committing another crime. Defendant is the type of criminal the habitual offender statute was enacted to punish, as he continues to disregard the law. As such, the trial court erred in finding Defendant exceptional and imposing a thirteen-year sentence. Accordingly, Defendant's sentence is vacated and the matter remanded for resentencing.

**DECREE:**

Defendant's habitual offender adjudication is affirmed. Defendant's sentence is vacated and the case is remanded for resentencing.

**CONVICTION AFFIRMED, CASE REMANDED FOR RESENTENCING, WITH INSTRUCTIONS.**

14